JOHN R. CASSIDY et al., Respondents, *v.* BOLTON HALL et al., Appellants.

Defendants, Hall, Nicoll and Granbery, as parties of the first part, entered into a contract with defendant, the U. S. R. Co., which recited that the parties of the first part contemplated assuming control of said company, when, if ever, they should be satisfied that its business was a profitable one, and that it was expedient some arrangement should be made whereby that question might be determined; in consideration whereof and of the mutual covenants and agreements it was agreed that the parties of the first part, to enable the company to fill its orders, for goods manufactured by the company, should make advances upon assignment of such orders as they should approve ; said parties of the first part to collect each of the orders so assigned, and out of the proceeds retain the sum advanced thereon with interest and a proportion of the profits made by the company, the same to be not less then ten per cent of the face of the order. The company also executed to H., N. and G. a chattel mortgage upon its property to secure such advances. In an action to recover for goods sold to

. the company, *held*, that the contract did not constitute a copartnership between the parties either *inter sese* or as to third persons.

Where a party is only interested in the profits of a business as a means of compensation for services rendered or for money advanced, he is not a partner.

Also *held*, that acts and declarations of H., N. and G., consisting of efforts on their part to place the company in a sound financial condition, giving directions to its employes, seeking to obtain orders for it, and to establish its credit, were not inconsistent with the purpose of the agreement and did not bind them as partners.

It was proved upon the trial that certain representations were made by said defendants to plaintiffs as to the responsibility of the company and their obligation to pay its debts. *Held*, the most that could be claimed therefrom was that thereby defendants made a contract of guaranty which, as it was not reduced to writing, was void under the statute of frauds.

A witness for plaintiff testified that there was a sign upon the factory of the company which read " Hall, Nicoll and Granbery's Factory, Top Floor." There was no proof that plaintiffs ever saw or knew of the sign, or that any reliance was placed upon it when their debt was contracted. *Held*, that this testimony was insufficient to authorize a recovery against said defendants.

So, also *held*, as to declarations of one of the defendants to customers referring to the factory as their own and speaking of its work as work they were doing, in the absence of evidence that it was 'known to or relied upon by plaintiffs when they sold the goods.

(Argued October 8, 1884; decided October 28, 1884.)

APPEAL by defendants Hall, Nicoll and Granbery, from a judgment of the General Term of the Court of Common Pleas, in and for the city and county of New York, in favor of plaintiffs, entered upon an order made June 9, 1882, which overruled said defendants' exceptions and directing judgment on a verdict.

This action was brought to recover against defendants as alleged copartners for goods sold to them as such.

Defendants Hall, Nicoll and Granbery answered separately denying that they were copartners with defendant, the United States Reflector Company, or that the goods were sold and delivered to them. Plaintiffs introduced in evidence the following contract, executed by the parties named therein : -

" This agreement made and entered into in the city of New York, this 22d day of April, one thousand eight hundred and eighty, between Bolton Hall, Benjamin Nicoll and David W. Granbery, all of the city of New York, composing the firm of Hall, Nicoll & Granbery, parties of the first part, and the United States Reflector Company, a corporation organized and existing under and by virtue of the laws of the State of Connecticut, party of the second part, witnesseth that

" Whereas, said parties of the first part contemplate assuming the control of the said The United States Reflector Company when, if ever, they shall be satisfied that the business of said Company is a profitable one and that it fully realizes their expectations ; and

" Whereas, it is expedient that some arrangement should be made whereby the profitableness of said business may be determined by them and the representations made by said company as to the character and volume of its business may be proven to the satisfaction of the said parties of the first part :

" Now, therefore, in consideration of the premises and of the mutual promises, covenants and agreements each to and with the other made as hereinafter set forth, and of the sum of one dollar each to the other in hand paid, the parties to this agreement do covenant, promise and agree to and with each other in the way, manner and form following, to-wit :

" First. The said parties of the first part shall furnish the money necessary to execute the orders of The United States Reflector Company for goods manufactured and to be manufactured by it in accordance with the claims and specifications of any and all the letters-patent to it belonging or otherwise, by making advances of money to said company on such of said orders as they, the said parties of the first part, shall approve of ; and when and so long as the said The United States Reflector Company shall be indebted to the said parties of the first part for money paid to it by their said firm in discounting the bills and notes of said company received by it in the ordinary course of business, as set forth in section fifth of this agreement, then in that case it shall be obligatory upon said company and

the said company does hereby covenant, promise and agree to allow the said parties of the first part at their option to make such advances on each and every order that it may receive for its manufactured, and to be manufactured goods, and to submit each and every order to said firm for that purpose, and to pay for such advance as hereinafter set forth; but when and so long as the said The United States Reflector Company shall not be indebted to the said parties of the first part for money paid to it by said firm, or discounting the bills and notes of said company as set forth in said section fifth of this agreement, then in that case it shall not be obligatory upon said company to allow said parties of the first part to make such advances, but the said company may at its option apply to said firm for that purpose.

"Second. The said The United States Reflector Company shall and will assign, transfer and set over to said Hall, Nicoll & Granbery at the time any such advance is made, the bill or order upon which they, the said parties of the first part, shall make such an advance as hereinabove set forth, with full power to collect and sue for the same, and to receipt therefor on collection.

"Third. The said parties of the first part shall in all cases collect every bill or order so assigned to them as aforesaid, and upon which they have made an advance to said company as hereinabove stated, and out of the money arising from the payment thereof, the said parties of the first part shall retain the amount advanced by them thereon as hereinabove mentioned, together with six per cent interest thereon from the date of such advance, and in addition thereto the amount of twenty-five (25) per cent of the face of every such bill or order where the profits to the said company on the cost of making up the bill or order is one hundred per cent, and in the same proportion when the said profit is less, but in no case the said parties of the first part shall receive less than ten per cent on the amount advanced by them in addition to the amount so advanced on any bill or order as hereinbefore mentioned.

"Fourth. If the said company shall have on hand materials sufficient to make up the whole or part of any order or orders,

the said parties of the first part will advance to the said company on the said material estimated according to its market value, money sufficient to execute said order or orders on the same terms, at the same rates, and in the same method as stated in the first, second and third articles of this agreement.

" Fifth. The said parties of the first part shall and will discount all such notes, bills, checks, drafts and accounts belonging to said The United States Reflector Company and received by it in the ordinary and usual course of its business, as they, the said parties of the first part, shall approve of, but not otherwise, at the rate of six per cent per annum.

" Sixth. The said The United States Reflector Company shall and will not, during the continuance of this agreement, borrow money on their orders or order for the goods manufactured or to be manufactured by, under and in accordance with any letters-patent to it belonging, or otherwise, or allow its bills or notes to be discounted by any person or persons whomsoever other than the said parties of the first part.

" Seventh. This agreement shall be terminated at any time whatsoever, at the pleasure and option of the said parties of the first part, by a written notice to the company to that effect, served on its treasurer; and on the service of said notice, in the way and manner aforesaid, this agreement shall then cease and determine, and the parties of the first part hereto shall be absolutely and forever discharged and released from any obligation or liability hereby created, except that they, the said parties of the first part, shall have the right, and they are hereby empowered, to collect any bill or order upon which they have advanced, as provided in the first article of this agreement, and which may not have been collected by them at the time of the termination of this agreement as herein provided, and to receive and retain out of the proceeds of said collection the amounts which, under the third article of this agreement, they are entitled to.

" Eighth. Unless sooner terminated as hereinbefore provided, this agreement shall continue in full force and effect until the

1st day of February, 1881, and be binding on the parties hereto and their legal representatives and successors."

The further material facts are stated in the opinion.

*Wm. B. Hornblower* for appellants. The written agreement did not, of itself, constitute a partnership, either *inter sese* or as to third persons. (*Richardson* v. *Hughitt*, 76 N. Y. 55, 58; *Leggett* v. *Hyde*, 58 id. 272; *Eager* v. *Crawford*, 76 id. 97, 101; *Burnett* v. *Snyder*, id. 344; 81 id. 550, 555; *Ex parte Hamper*, 17 Vesey, 404; Story on Part., § 49; Parsons on Part. 74; *Champion* v. *Bostwick*, 18 Wend. 184; 3 Kent, 25; 1 Smith's Leading Cases, 984; *Curry* v. *Fowler*, 46 N. Y. Sup. Ct. 195; 87 N. Y. 33; Lindley on Part. 24, 25; Story on Part., §§ 34-8, 45-6, 49; *Loomis* v. *Marshall*, 12 Com. 69; *Turner* v. *Bissell*, 14 Pick. 192; *Adee* v. *Cornell*, 25 Hun, 78; *Boston & Colorado Smelting Co.* v. *Smith*, 13 R. I. 27; *Cox* v. *Hickman*, 8 H. L. Cases, 268; *Mollwo, March & Co.* v. *Court of Wards*, L. R., 4 P. C. 419; *Pooley* v. *Driver*, L. R., 5 Ch. Div. 458; *Ex parte Delhasse*, L. R., 7 Ch. Div. 511; *Mollwo* v. *Court of Wards*, L. R., 4 P. C. 419.) The complaint being framed on the theory of partnership, and no other question being presented by the evidence or by the charge to the jury, the plaintiffs could not now set up any other theory for recovery, even if there were any other theory available. (*Arnold* v. *Angell*, 62 N. Y. 508; *Miller* v. *Barber*, 66 id. 558; *Hudson* v. *Swan*, 83 id. 552.) The fact that the judge charges the jury to disregard immaterial evidence does not cure the error of its admission. It produces its effect in the minds of the jury at the time, and this effect is not removed by the charge. (*Erben* v. *Lorillard*, 19 N. Y. 299; *Wright* v. *Equitable Life Insurance Society*, 41 N. Y. Sup. Ct. 1; *Allen* v. *James*, 7 Daly, 13; 1 Lindley on Part. 50; Story on Part. [7th ed.], § 65, note 2.)

*Fred. M. Littlefield* for respondents. A person who has a share in the profits of a firm acquires a property in the partnership assets, which, apart from his joint liability for debts,

would give a preference over firm creditors. (*Grace* v. *Smith,* 2 Black, 998; *Waugh* v. *Carver,* 2 H. Bl. 247; *Dob* v. *Hasley,* 16 Johns. 40; *Pott* v. *Eyton,* 3 Mann., Gr. & Scott, 32, 39; 3 Kent's Com. 27; *Burnett* v. *Snyder,* 81 N. Y. 550; *Ex parte Hamper,* 17 Ves. 404; Story on Part., § 49; Parsons on Part. 74; *Champion* v. *Bostwick,* 18 Wend. 175; *Richardson* v. *Hughitt,* 76 N. Y. 55, 57; *Marston* v. *Gould,* 69 ıd. 220.)    A person who bargains for the profits of an enterprise is liable as a partner for losses. (*Haas* v. *Root,* 16 Hun, 526; *Greenwood* v. *Brink,* 1 id. 227; *Burnett* v. *Snyder,* 81 N. Y. 555; *Leggett* v. *Hyde,* 58 id. 272; *Manhattan Brass Co.* v. *Sears,* 45 id. 797; *Mason* v. *Patridge,* 66 id. 633; *Fitch* v. *Hall,* 14 How. 175; *Dob* v. *Halsey,* 16 Johns. 34; *Burns* v. *Rowland,* 40 Barb. 368; *Conkling* v. *Barton,* 43 id. 435; *Cushman* v. *Bailey,* 1 Hill, 526; *Walden* v. *Sherbourne,* 15 Johns. 409; *Chase* v. *Barrett,* 4 Paige, 148; *Campion* v. *Bostwick,* 18 Wend. 175; *Everett* v. *Coe,* 5 Den. 180; *Oakley* v. *Aspinwall,* 2 Sand. 7; *Catskill Bank* v. *Gray,* 14 Barb. 471; *Hodgeman* v. *Smith,* 13 id. 302; *Burckle* v. *Eckhart,* 3 N. Y. 132; *Adee* v. *Cornell,* 25 Hun, 78; *Rosenfield* v. *Haight,* 53 Wis.; 25 Alb. L. J. 158; 44 Mich. 192; 9 Mo. App. 519; 1 Smith's Leading Cases, 491; *Waugh* v. *Carver,* 2 H. Blk. 235; 15 Conn. 68; 2 Tenn. Ch. 473; 1 Ch. App. 420; *Pierson* v. *Steinmeyer,* 4 Rich. 309, 319.)    Hall, Nicoll & Granbery did not make a loan to the United States Reflector Company, but they contributed a sum of money toward the capital of the business, out of which they bargained for half the profits. (*Ontario Bank* v. *Hennessy,* 48 N. Y. 45; *Pooley* v. *Driver,* 5 Ch. Div. 458; 46 L. J. Ch. 446; *In re Megerave,* 7 Ch. Div. 571; Parsons on Part. [3d ed.] 134, 141, 142, 143; *Burnett* v. *Snyder,* 81 N. Y. 550; *Ex parte Hamper,* 17 Vesey, 404; Story on Part., § 49; Parsons on Part. 74.)    Hall, Nicoll & Granbery constituted the United States Reflector Company their agents with respect to the undertaking in which they were jointly interested with them, and they are, therefore, liable as partners. (*Beecher* v. *Bush,* 23 Alb. L. J. 317; *Curry* v. *Fowler,* 46 Sup. Ct. 196; *King* v. *Saria,* 69

N. Y. 24; 3 B. & S. 847; 32 L. J., Q. B. 217; 1 H. & R. 117; L. R., 1 C. P. 86; *Cox* v. *Hickman*, 28 Ohio St. 319; 22 Am. Rep. 387; *Ontario Bank* v. *Hennessy*, 48 N. Y. 545; *Leggett* v. *Hyde*, 58 id. 272; *New York and New Hampshire Railroad Co.* v. *Schuyler*, 34 id. 30, 65, 73; *Baird's Case*, L. R., 5 Ch. App. 725, 733; *Greenwood's Case*, 3 DeG., M. & G. 459, 476; *Edmunds* v. *Bushell*, L. R., 1 Q. B. 97; *King* v. *Saria*, 69 N. Y. 24.) The pretense that the transaction was a loan of money is a mere sham, contrived to evade partnership liability. (Lindley on Partnerships [43d Eng. ed.], 43; *Parker* v. *Canfield*, 37 Conn. 250–267; *Barry* v. *Nesham*, 3 M., G. & S. 641; *Bromley* v. *Elliot*, 38 N. Y. 286–304; *Pettee* v. *Appleton*, 114 Mass. 114.) Representations, conduct, deportment and circumstances, calculated or likely to induce the belief that the parties are partners, will render them liable to creditors doing business with them under the impression so created. (*Richardson* v. *Hughitt*, 76 N. Y. 55, 59; Am. Law Review, Dec., 1881, 797, 800; *Brigham* v. *Clark*, 100 Mass. 430; *Burns* v. *Rowland*, 40 Barb. 368; *Vibbard* v. *Roderick*, 51 id. 616; *Stiles* v. *Meyer*, 7 Lans. 195; 64 Barb. 77; *Moses* v. *Jerome*, 10 Bos. 220; *Fitch* v. *Hall*, 16 How. Pr. 175; *Irwin* v. *Conklin*, 36 Barb. 435; 5 B. & A. 147; 10 B. & C. 138; 2 H. Bla. 235, 243; 19 Ves. 461; 44 N. H. 569; 22 Vt. 511; 51 Me. 52; 40 Ill. 455; 1 Smith's Lead. Cas. [7th Am. ed.] 1306; 2 Greenl. on Ev. 438, § 483; id. 492, 493; *Bromley* v. *Elliot*, 38 N. H. 287; *Sheridan* v. *Medara*, 10 N. J. Eq. 469; *Winship* v. *Bank*, 5 Pet. 529; *Leggett* v. *Hyde*, 58 N. Y. 272; 17 Am. Rep. 244; *Lengle* v. *Smith*, 48 Mo. 276; *Champion* v. *Bostwick*, 18 Wend. 184; *Humstreet* v. *Howland*, 5 Den. 68; *Fitch* v. *Harrington*, 13 Gray, 468; *Manhattan Brass & Manuf. Co.* v. *Sears*, 45 N. Y. 797; *Pringle* v. *Leverich*, 48 N. Y. Supr. [J. & S.] 492.) Admissions of the parties sought to be charged as partners, as well as their acts, are competent evidence to show a holding out to the world, or to the parties dealing with them, that they are partners. (*Goode* v. *Harrison*, 5 B. & Ald. 147; *Palmer* v. *Pinkham*, 33 Me. 32; *Dutton* v. *Woodman*, 9 Cush. 255;

*Field* v. *Tenny*, 47 N. H. 513; *Drumen* v. *House*, 41 Penn. St. 30; *Poillon* v. *Secor*, 61 N. Y. 461; Parsons on Part. [3d ed.] 147; Am. Law Review, Dec., 1881, 792; 1 Lindley on Part. [Ewell] 24; *Malloo* v. *Court of Wards*, 4 P. C. 419, 438.) Hall, Nicoll & Granbery having held themselves out as partners are liable to plaintiffs and third parties. (*Daily* v. *Coons*, 64 Ind. 545; *Dodd* v. *Bishop*, 30 La. Ann. 1178; *Buckingham* v. *Burgess*, 3 McL. 364, 549; *Benedict* v. *Davis*, 2 id. 347; 29 Ga. 285; 20 Ill. 396; 21 Iowa, 518; 18 La. Ann. 613; 20 id. 568; 22 N. J. L. 372; 3 Phil. 298; 11 Humph. 271; 4 Tex. 2, 52; 14 Vt. 540; 32 Ark. 733; 25 Vt. 536; 116 Mass. 312; 30 Md. 1; 53 Ga. 98; 22 Vt. 511; 17 id. 449; 6 J. J. Marsh. 609; 2 Bush, 478; *Moss* v. *Jerome*, 10 Bosw. 220; *Burns* v. *Rowland*, 40 Barb. 368; *Nevin* v. *Conklin*, 36 id. 64; *Vise* v. *Anson*, 7 B. & C. 409; *Peckam* v. *Sears*, 6 A. & E. 469; *Freeman* v. *Cooke*, 2 Ex. 654; Lindley on Part. 48, 89, § 49; *Ex parte Watson*, 19 Ves. 461; *Kirkwood* v. *Cheetham*, 2 Fos. & Fin. 798; *Pringle* v. *Leverich*, 48 J. & S. 98; *In re Jewett*, 15 Bankr. Reg. 126; *Brown* v. *Leonard*, 2 Chitty, 120; Lindley on Part. 89, § 49. See, too, *Vise* v. *Anson*, 7 B. & C. 409.) The existence of a partnership is a question of fact. (*Eager* v. *Crawford*, 76 N. Y. 97; *Butler* v. *Fink*, 21 Hun, 210; *Smith* v. *Hollis*, 32 Vt. 695; *Dwinel* v. *Stone*, 30 Me. 384; *Jones* v. *N. Y. C. & H. R. R. R. Co.*, 62 How. 450; Lindley on Part., §§ 53, 54; *Butler* v. *Fink*, 10 N. Y. Weekly Dig. 163; *Kenshaw* v. *Root*, 60 Ind. 220; *Lewis* v. *Post*, 1 Ala. 65; *Taft* v. *Warde*, 111 Mass. 518; *Scranton* v. *Rentford*, 29 Ga. 341; *State* v. *Wiggins*, 20 N. H. 449. See 14 Miss. 334; *Peirson* v. *Steinmeyer*, 4 Rich. 309; *Whately* v. *Menheim*, 2 Esp. 608; *Cragain* v. *Carleton*, 21 Me. 493; *Jones* v. *N. Y. C. R. R.*, 62 How. 450; 45 N. Y. Supr. 107.)

MILLER, J. The written contract entered into between the defendants Hall, Nicoll & Granbery and the United States Reflector Company did not, by its terms or on its face, constitute a copartnership, either *inter sese* or as to third persons. After

stating that it was contemplated the defendants should assume
control of the company when, if ever, they shall be satisfied
that the business of said company is a profitable one, and that it
fully realizes their expectation, and that it is expedient that some
arrangement should be made whereby the profitableness of the
business may be ascertained and proven to the satisfaction of the
defendants, the agreement provided for an advancement of
money by the defendants, for the benefit of the company, upon
orders, for goods manufactured by the company, which they
should approve. It also contained other provisions in regard to
the advancements to be made by the defendants and for securing
the same, and for a percentage to be paid the defendants upon
the orders. It bore date of April 22, 1880, and was to con-
tinue in force until February 1, 1881. It was afterward
extended until August 1, 1881. A chattel mortgage was also
executed to the defendants upon the property of the company
to secure the advances made by them. Under the agreement
the advances were to be made only upon such orders as the
defendants approved, and the most that can be claimed from
it is that the defendants were the financial agents of the com-
pany to make advances and discount their paper, for the
purpose of relieving the company from the financial embarrass-
ment under which it was evidently laboring, for which they,
the defendants, were to receive a proportion of the face of the
orders upon which the advances were made as a compensation
for the risks they incurred and for the use of the money
advanced by them. They were not generally interested in the
affairs of the company, but only for a special and specific pur-
pose and in no sense were they partners. This view was
upheld by the judge upon the trial and by the opinion of the
General Term. We think the courts below were right in this
respect, and, within the decisions in this court, it is well settled
that when a party is only interested in the profits of a business
as a means of compensation for services rendered, as was the
fact under the contract in the case at bar, or for money advanced,
he is not a partner. This question was distinctly presented in
*Richardson* v. *Hughitt* (76 N. Y. 55), and it was there held

that a person who has no interest in the business of a firm or in the capital invested, save that he is to receive a share of the profits as a compensation for services or for money loaned for the benefit of the business, is not a partner and cannot be held as such by a creditor of the firm. In that case advances were to be made upon personal property, to be manufactured and delivered, for which, when sold, the defendant was to receive one-fourth of the profits and his advances with interest at five and a half per cent. The case cited is directly in point, the same principle is involved and there is a striking analogy in the facts which renders it applicable to the question now considered. We are unable to perceive any such distinction existing between the two cases which authorizes a holding that the case cited is not in point. That case was approved and upheld in *Curry* v. *Fowler* (87 N. Y. 33), and the principle decided is fully sustained in *Eager* v. *Crawford* (76 id. 97) and *Burnett* v. *Snyder* (id. 344). These cases are conclusive upon the question considered, and none of the decisions in this State are adverse to the doctrine which is therein laid down. We do not deem it necessary, in view of the fact that the law upon the question discussed is well settled in this court, to examine the English authorities bearing upon the subject.

There was no proof upon the trial that the defendants claimed or held themselves out to be partners of the United States Reflector Company, or that they represented themselves as connected with the company in that capacity. The written agreement provided for a future arrangement with the defendants in case the business proved to be profitable, but did not state that they were going in as partners. Upon being asked on one occasion if the bills of certain parties would be paid, they replied that they would, and further that they would discount them for five per cent, thus asserting that their relationship with the company was not that of partners.

The plaintiffs claim that the conduct of the defendants and their connection with the business of the company was such as to create a partnership as to the plaintiffs, and they rely. upon the acts and declarations of the defendants proved upon

the trial, which it is claimed evince that they held out to the world and to the parties dealing with them that they were partners. These acts consist of efforts made by the defendants to place the company in a sound financial condition; in giving directions to the employes of the company; in seeking to obtain orders in connection with the business, and to establish the credit of the company and to build up its business, all of which we are not prepared to say was inconsistent with the contract into which they had entered and the purpose which evidently was to re-establish the business of the company upon a sound financial basis and to render it successful. All this might be done without making defendants liable as partners and in conformity with the object and purpose with which the agreement was entered into between the defendants and the company, and after a careful examination of the various acts and declarations which are relied upon, we are unable to see that any of them, or all taken in connection, can be regarded as holding out to the world that the defendants were partners and actually did make themselves liable as such for the debts of the United States Reflector Company.

As to the declarations proved to have been made by the defendants in regard to the responsibility of the company and the credit to which it was entitled, or the defendants' obligation to pay such debts the most that can be claimed for them is that the defendants thereby made a contract of guaranty which was not reduced to writing, and, therefore, within the statute of frauds, or an original promise to see the bills paid. They do not establish that the defendants were partners, and as this action is not brought upon any original promise or any guaranty, but upon the claim that a partnership existed, they are insufficient to uphold the plaintiffs' right to recover. The statements proved were entirely consistent with the view that no partnership existed and import to the contrary, and it might well be that the defendants were willing to become responsible for the demands of the plaintiffs without incurring the liability of partners for all the debts of the company.

One of the witnesses upon the trial testified that there was a sign on the factory of the United States Reflector Company which read, " Hall, Nicoll & Granbery's Factory, Top Floor," but there is no proof that either of the plaintiffs ever saw or knew of the sign, or that any one else saw or knew of it who had dealings with the company, or that any reliance was placed upon that fact by the plaintiffs when their debt was incurred. This evidence, of itself, would be insufficient to establish the plaintiffs' right to recover in this action against the defendants as partners. It may perhaps be said, in one sense, as the defendants were furnishing money to aid the company, had a mortgage on its property, were seeking to re-establish its financial condition, and were interested in all goods manufactured, that there was ground for claiming that the factory was the factory of the defendants. The declarations of one of the defendants to customers of the firm, in the absence of any creditor, referring to the factory as their own, and stating that they had their sign up, which are not shown to have been known to the plaintiffs or relied upon by them, do not, of themselves, establish a partnership. They may be explained very intelligibly by regarding them merely as a statement that they were interested in the concern. The last remark will apply also to the fact that one of the defendants, on one occasion, spoke of the work " they were doing," referring to the United States Reflector Company.

No other declarations, as to the relationship of the defendants to the company, tend to establish that they were partners ; no remarks were ever made by the defendants to the plaintiffs on that subject, nor is there any proof which shows that the plaintiffs believed that defendants were such partners, and that they parted with their property, relying upon the fact that a copartnership existed between the defendants and the United States Reflector Company.

We think it is very apparent that no representations were proved which tended to establish that the defendants were copartners with the company, and as such liable for the demand of the plaintiffs. All of the acts and declarations

proven were consistent with the agreement entered into by the defendants with the company; no case was made out against them as partners, and the court erred in denying the motion for a nonsuit.

· The judgment should, therefore, be reversed, and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.